---

### In re GOTTHEIM.

(Supreme Court, Appellate Division, First Department. December 6, 1912.)

ATTORNEY AND CLIENT (§ 45*)—DISBARMENT—FALSE CERTIFICATE OF ACKNOWLEDGEMENT.

An attorney, falsely certifying to a deed being acknowledged before him as a commissioner of deeds, which is forgery under Penal Law (Consol. Laws 1909, c. 40) § 885, will be disbarred.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 63; Dec. Dig. § 45.*]

Charges were prepared by the Association of the Bar of the City of New York against I. Morton Gottheim, an attorney, of professional misconduct. Respondent disbarred.

See, also, 146 App. Div. 937, 131 N. Y. Supp. 1117.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Julius Henry Cohen, of New York City, for petitioner.
I. Morton Gottheim, of New York City, pro se.

INGRAHAM, P. J. The respondent was admitted as an attorney and counselor at law in June, 1909. He had been for several years before that time a clerk in the office of a practicing attorney in the city of New York, and had been on terms of intimate friendship for many years with a family that consisted of a Mrs. Goldman and her two sons. The respondent was also a commissioner of deeds, and on the 22d of July, 1909, he certified to the execution by one Sarah Wilner of two deeds purporting to convey her interest in certain real property in Brooklyn, in the county of Kings. His certificate was that on the day named—

"before me personally came Harris Goldman, Fanny Goldman (his wife), and Sarah Wilner, to me known and known to me to be the individuals described in and who executed the foregoing instrument, and they thereupon acknowledged to me that they had executed the same,"

—and that was signed by the respondent as commissioner of deeds. These two deeds were recorded in Brooklyn in the following November, upon this certificate. Sarah Wilner, one of the grantors, charged that these deeds were forgeries; that she had never signed them, or executed them, and knew nothing of them until they were recorded; that she never appeared before the respondent as a commissioner of deeds, or in any other capacity, and acknowledged the execution of the instruments; that at the time of the alleged acknowledgment of the instruments she was sick and unable to leave her bed, suffering from severe attack of inflammatory rheumatism; and that for at least a month before the 22d of July, 1909, and a month afterwards, she was absolutely unable to leave her bed to sign any instruments or to attend to any business. And these facts were before the referee, proved by her own testimony, the testimony of her physicians, and the testimony of her children. There was considerable testimony taken before the referee as to whether or not these deeds were forgeries, and after what had evidently been a very painstaking investigation by him he has reported that the deeds were forgeries, that the grantor did not appear before the respondent and acknowledge these deeds, and that the acknowledgments thereof were false certificates.

The respondent now comes in, and in his brief submitted on the application for a final order on the referee's report "throws himself upon the mercy of this court, frankly admits that Mrs. Wilner did not appear before him and acknowledge the execution of her signature," and then states what he now claims to be "the truth of the matter": That the respondent was requested to draw up two deeds, each conveying one of the houses; that the respondent did this, and gave them to Samuel Goldman; that Mrs. Wilner called at Samuel Goldman's place of business and signed the deeds in the presence of the said Samuel Goldman, and acknowledged to him the execution thereof; that

the names of the grantees in each of the deeds were left blank, but the names of the persons who loaned the money were thereafter to be filled in; that the deeds were also signed by Harris Goldman and his wife; that the respondent attached his name thereto as commissioner of deeds; that a short time thereafter Mrs. Goldman obtained a loan from Mr. Adolph Gminder and from one of her sons, I. Edwin Goldman, and the said names were inserted in the deeds as grantees; that this was done on July 22, 1909, and the dates were changed by the respondent to said date, and the deeds were recorded only November 1, 1909; that the mistake respondent made was to purport to take Mrs. Wilner's acknowledgment, and it did not occur to him what a serious thing it was.

The respondent, therefore, now comes before the court and admits that these acknowledgments executed by him were false certificates, and that he was guilty of forgery in the first degree under section 510 of the Penal Code, now section 885 of the Penal Law (Consol. Laws 1909, c. 40), which provides that an officer authorized to take the proof or acknowledgment of an instrument which by law may be recorded, who willfully certifies falsely that the execution of such an instrument was acknowledged by any party thereto, or that the execution of any such instrument was proved, is guilty of forgery in the first degree. But this respondent, who now concedes his guilt, took a very different position before the referee. He was there called as a witness on his own behalf, and testified again and again that this grantor did appear before him on the 22d of July, 1909, and did acknowledge to him the execution of that instrument, thus adding perjury to the crime with which he was charged.

The situation that existed at the time these alleged deeds were executed explains somewhat the object of the parties in forging the name of this grantor. She was then very sick. If she had died, it would have been almost impossible to have disproved the execution of these instruments, and they would have been sufficient to divest her of title to the real property. The whole story told by the respondent and by Goldman, who swore that these deeds were executed in his presence, is improbable in the extreme. The two grantors in these deeds owned this property in common. It was said that some money had to be raised to prevent foreclosure of a mortgage, and these deeds were obtained for the purpose of raising money for that purpose. Yet they were absolute on their face, no instrument of defeasance was executed, and there was nothing to show that the deeds were not what they purported to be—an absolute conveyance of the property. It appeared that, as soon as this grantor found that these deeds had been recorded, she expressly repudiated having executed them, and the parties to whom the premises had been conveyed voluntarily and without the payment of any money reconveyed the property to her.

The seriousness of this offense seems to be entirely overlooked by the respondent. Upon the faith of these acknowledgments rests the title of real property, and the only security of such titles is in the fidelity with which notaries and commissioners of deeds perform their duty in requiring the appearance of parties to such instruments be-

fore them, and always refusing to execute a certificate unless the parties are actually known to them, or the identity of the parties executing the instruments are satisfactorily proved. We cannot overlook this offense, and cannot allow a person guilty of it to remain a member of the profession.

The respondent is therefore disbarred. All concur.